BEAR FRITZ LAND COMPANY, an Alaska Limited Partnership, Appellant,

v.

KACHEMAK BAY TITLE AGENCY, INC., and Ticor Title Co., Appellees.

No. S–6992.

Supreme Court of Alaska.

July 5, 1996.

---

Kermit E. Barker, Anchorage, for Appellant.

C. Michael Hough, Law Offices of C. Michael Hough, Homer, for Appellee Kachemak Bay Title Agency, Inc.

Jennifer M. Coughlin, Preston Gates & Ellis, Anchorage, for Appellee Ticor Title Co.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

COMPTON, Chief Justice.

### I. FACTS AND PROCEEDINGS

In 1984 Robert Cooper and Virginia Cooper owned a parcel of property in Homer known as Fritz Subdivision, Unit 2. While the Coopers were making improvements on the parcel, a representative of the Army Corps of Engineers (Corps) inspected the site and ordered the Coopers to stop construction. The Corps believed the parcel included wetlands which the Coopers needed a permit to fill.

The Coopers applied for a wetlands permit in October 1984. On April 23, 1985, the Corps sent the Coopers copies of a proposed permit which allowed them to fill certain areas in the subdivision. The permit became effective on May 2, 1985, the date on which it was signed by the Chief of the Corps' Regulatory Branch. It was valid for three years from the date of issuance. The Coopers never recorded the permit.

During the permitting process, the Coopers apparently were negotiating the sale of the subdivision to Bear Fritz Land Company (Bear Fritz). On May 1, 1985, Bear Fritz obtained from Kachemak Bay Title Agency, Inc. and Ticor Title Insurance Company (col-

lectively, Ticor) a preliminary commitment for title insurance on the property. On May 8, Bear Fritz executed an agreement to purchase the lots. At the end of May the parties closed the sale.[1] On August 22, Ticor sent Bear Fritz a title insurance policy.[2]

Bear Fritz claims it first learned of the wetlands permit in 1989 or 1990 while negotiating the sale of two lots in the subdivision. The permit already had expired. Bear Fritz stopped making payments on the purchase money note.

The Coopers sued Bear Fritz on the note. Bear Fritz filed a third-party complaint against Ticor, claiming that Ticor's failure to disclose the permit in the title policy and the preliminary commitment was a breach of its contract with Bear Fritz, and negligence on which Bear Fritz reasonably had relied in closing the deal.[3] Ticor moved for summary judgment. The superior court granted the motion, primarily on the basis of its conclusion that the permit and the property's wetlands status were not defects in the title. Bear Fritz appeals. We affirm.

### II. DISCUSSION

#### A. Standard of Review.

We will uphold summary judgment only if the record presents no genuine issues of material fact and the moving party is entitled to judgment on the law applicable to the established facts. *Bishop v. Municipality of Anchorage,* 899 P.2d 149, 153 (1995). When making this determination, we will draw all reasonable inferences in favor of the non-moving party. *Id.*

#### B. The Policy Language Is Not Ambiguous.

The policy Ticor issued states:

Ticor ... subject to the conditions and stipulations of this policy, does hereby insure the person or persons named ... against loss or damage sustained by reason of:

---

1. The Coopers financed the transaction.

2. The policy is dated June 10, 1985.

3. The Coopers and Bear Fritz settled their dispute.

1. Title to the estate, lien or interest ... being vested, at the date hereof, otherwise than as stated ... or

2. Any defect in, or lien or encumbrance on, said title existing at the date hereof, not shown in Schedule B[.]

Schedule B provides that "defects, liens, encumbrances and other matters against which the company does not insure" include:

Any laws, governmental acts or regulations, including but not limited to zoning ordinances, restricting, regulating or prohibiting the occupancy, use or enjoyment of the land or any improvement thereon, or any zoning ordinances prohibiting a reduction in the dimensions or area, or separation in ownership, of any lot or parcel of land; or the effect of any violation of any such restrictions, regulations or prohibitions.

Bear Fritz devotes a significant portion of its briefing to a discussion of the general principles of insurance contract construction. According to Bear Fritz, both the general insuring clause and the governmental regulation exception are vague and ambiguous. It argues that the general insuring clause should be construed in favor of coverage, and that "[t]he general exception for laws and ordinances is void because it is not intelligible to a lay person." Bear Fritz further argues that "had Appellee Ticor not intended to cover wetlands designations it should have expressly stated so in the Title Policy to avoid any possible ambiguity or misunderstanding by its policy holder."

■ Bear Fritz's arguments are not persuasive. The policy language is reasonably clear and unambiguous. *See Somerset Sav. Bank v. Chicago Title Ins. Co.*, 420 Mass. 422, 649 N.E.2d 1123, 1126–28 (1995) (finding unambiguous a title insurance policy virtually identical to that presented here); *Lick Mill Creek Apartments v. Chicago Title Ins. Co.*, 231 Cal.App.3d 1654, 283 Cal.Rptr. 231, 234–38 & n. 3 (1991) (same). Therefore, the principles of construction favoring the insured are not material. *See Jarvis v. Aetna Casualty and Sur. Co.*, 633 P.2d 1359, 1363 (Alaska 1981) ("This rule [that ambiguity and uncertainty in an insurance policy is resolved in favor of the insured] is not ap-

plied whenever two parties to a contract simply disagree over the interpretation of any of its terms. Rather, ambiguity is found to exist only when the contract, taken as a whole, is reasonably subject to differing interpretations." (internal quotations omitted)). The general rule is that " '[a]n insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected.' " *Id.* (quoting *Continental Casualty Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 296 P.2d 801, 806 (1956)). The rule applies here; it negates Bear Fritz's contention that coverage for wetlands designation cannot be excluded because the policy exception does not mention it expressly and specifically.

C. *The Property's Wetlands Status and the Permit Restrictions Are Not a "Defect in, or Lien or Encumbrance on" the Title.*

■ Bear Fritz contends that the property's wetlands classification and the restrictions of the wetlands permit are a defect, lien or encumbrance covered by the title policy. Ticor responds:

Bear Fritz loses its coverage argument at the very first level of insurance policy analysis: as the permit in question did not affect title, it never came within the type of risk that this insurance purported to cover in the first place.... Title insurance does not cover all risks involved in the purchase or ownership of property. As the name implies, title insurance provides protection against defects in *title*. ... [A] title policy identifies the party in whom title vests, and insures against defects in that vested party's title. It does *not* insure that the new owner will be able to develop the property without restriction.

(Emphasis in the original.)

Ticor is correct. The law amply supports the distinction Ticor draws between defects or encumbrances affecting the marketability of title and defects affecting only the market value of the property. The law also supports Ticor's contention that the wetlands designation and permit are in the latter category.

In *Domer v. Sleeper*, we accepted the Washington Supreme Court's definition of "encumbrance" as

> any right to, or interest in, land which may subsist in third persons, to the diminution of the value of the estate of the tenant, but consistent with the passing of the fee; and, also, a burden upon the land depreciative of its value, such as a lien, easement, or servitude, which, though adverse to the interest of the landowner, does not conflict with his conveyance of the land in fee.

533 P.2d 9, 11 (Alaska 1975) (quoting *Hebb v. Severson*, 32 Wash.2d 159, 201 P.2d 156, 160 (1948)). In *Domer* we held that building and fire code violations discovered by the buyer of a building were not encumbrances affecting the marketability of title. "[A] contrary rule would," we said, "generate considerable uncertainty as to the buyer's title." *Id.* at 13.

The requirement that the property in this case comply with wetlands-protection provisions is similar to the requirement that the building in *Domer* comply with the building and fire codes. As with the building and fire code violations in *Domer*, the wetlands designation here is not an encumbrance: it does not give any third person a right to or interest in the property, nor does it burden the property with a lien, interest or servitude.

Cases from other jurisdictions further support Ticor's position. In *Hocking v. Title Ins. & Trust Co.*, 37 Cal.2d 644, 234 P.2d 625 (1951), the buyer of two lots in a subdivision found that she could not build on the lots without considerable unforeseen expense, because the seller had not complied with various local ordinances regarding subdivision of the land. *Id.* 234 P.2d at 625–27. She claimed the title was defective and sought damages from the title insurer. *Id.* The California Supreme Court denied her claim:

> Although it is unfortunate that plaintiff has been unable to use her lots for the building purposes she contemplated, it is our view that the facts which she pleads do not affect the marketability of her *title* to the land, but merely impair the market *value* of the property. She appears to possess fee simple title to the property for whatever it may be worth; if she has been

damaged by false representations in respect to the condition and value of the land her remedy would seem to be against others than the insurers of the title she acquired.

*Id.* 234 P.2d at 629–30 (emphasis in original). Faced with similar facts forty years later, the Supreme Court of Mississippi reached the same result in *Seymour v. Evans*, 608 So.2d 1141, 1144–47 (Miss.1992).

In *Frimberger v. Anzellotti*, the Appellate Court of Connecticut held that wetlands designation does not affect the marketability of title or rise to the level of an encumbrance, even where the property had been improved in violation of the wetlands provisions. 25 Conn.App. 401, 594 A.2d 1029, 1031–32 (1991) (citing *Domer*, 533 P.2d 9). In *Lick Mill Creek Apartments*, the California Court of Appeals held that a title insurance company whose representative had physically inspected a property prior to issuing a title insurance policy was not responsible for the costs associated with the cleanup of hazardous wastes on the insured property. 283 Cal. Rptr. at 233, 236–37. The court found that although the wastes may have affected the market value of the property, they did not affect the marketability of title. *Id.* 283 Cal. Rptr. at 236.

Finally, in *Somerset Savings*, the Massachusetts Supreme Judicial Court held that a restriction which required the consent of the state's Executive Office of Transportation and Construction (EOTC) to build on land formerly used as a railroad right-of-way did not come within the general coverage of title insurance. 649 N.E.2d at 1127–28. It wrote:

> It is well established that building or zoning laws are not encumbrances or defects affecting title to property. Such restrictions are concerned with the use of land. There is a difference between economic lack of marketability, which concerns conditions that affect the use of the land, and title marketability, which relates to defects affecting the legally recognized rights and incidents of ownership. An individual can hold clear title to a parcel of land, although the same parcel is valueless or considered economically unmarketable because of some restriction or regulation

on its use. A title insurance policy provides protection against defects in, or liens or encumbrances on, title. Such coverage affords no protection for governmentally imposed impediments on the use of the land or for impairments in the value of the land.

... The requirement of [EOTC] approval, prior to the issuance of a building permit, is a restriction on the use of the property, but it does not affect the owner's title to the property. It is a restriction that may affect the value of the property and the marketability of the parcel, but it has no bearing on the title to the property.

The insurance policy provided coverage for losses sustained as the result of a defect in or lien or encumbrance on the title to the property and for unmarketability of the title. Although they may have impaired the property's market value or caused a halt to construction on the property, the requirements of [the railroad right-of-way restriction] have no effect on the marketability of the title nor did they create a defect, lien, or encumbrance on the title. The existence of the statutory restriction, therefore, does not give rise to coverage under the policy.

*Id.* (citations omitted). With a few minor changes, the reasoning and language of the *Somerset Savings* opinion could be applied to this case. We conclude that *Somerset Savings* and the other cited precedents are a correct statement of the law, and hold that the neither the property's wetlands status nor the existence of the permit is an insured event or circumstance covered by Ticor's policy.

In light of this conclusion, it is unnecessary for us to address Bear Fritz's claim that the policy's governmental regulation exception is inapplicable or its claim that Ticor had a duty to disclose the permit in the preliminary commitment. *See Bank of California v. First Am. Title Ins. Co.*, 826 P.2d 1126 (Alaska 1992) (establishing potential tort liability for misrepresentations made in preliminary commitments for title insurance).

## III. CONCLUSION

The judgment of the superior court is AFFIRMED.