Filed 9/30/13  Yen v. Chicago Title Co. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANN CHI YEN, | |
| Plaintiff and Appellant, | G047455 |
| v. | (Super. Ct. No. 30-2011-00502362) |
| CHICAGO TITLE INSURANCE COMPANY, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Linda S. Marks, Judge.  Affirmed.

Roberts and Roberts and Theodore K. Roberts for Plaintiff and Appellant.

Fidelity National Law Group and Kevin R. Broersma for Defendant and Repsondent.

\*          \*          \*

Appellant contends the trial court erred in sustaining a demurrer without leave to amend. Finding no error, we affirm.

I

FACTS

The verified first amended complaint alleges appellant Ann Chi Yen purchased a condominium unit located at 2516 North Tustin Avenue in Santa Ana on August 23, 2010. On that same day, she "took out a buyer's policy of Title insurance" from respondent Chicago Title Insurance Company.

According to her pleading, after appellant made the purchase, she "discovered that there was a lawsuit pending in the Orange County Superior Court in case #05CC00047 concerning this property. [¶] . . . This lawsuit and subsequent judgment increased the homeowner's assessment on said condominium from $42-48 per month to $2,000 per month, leaving the condominium with no economic value whatsoever. [¶] . . . The Preliminary Title Report from the Defendants, and each of them, did not disclose the fact that litigation was pending concerning this property."

Other allegations in appellant's first amended complaint state: "Plaintiff ANN CHI YEN now has a property which is unsalable because of the defect in title and worthless because the $2,000 monthly lease amount is greater than the fair market rent on the property, rendering Plaintiff ANN CHI YEN with a total loss;" and, "Defendants, and each of them, breached this policy by not indemnifying Plaintiff ANN CHI YEN from the losses she sustained due to a lawsuit (OCSC Case #05CC00047) which destroyed all value to the property purchased."

Respondent demurred to the first amended complaint. Attached to both the first amended complaint and the demurrer is a copy of the insurance policy, which states: "In addition to the Exclusions, You are not insured against loss, costs, attorneys' fees and the expenses resulting from: [¶] . . . [¶] 5. **A lease** with certain terms, covenants,

2

conditions and provisions set forth therein. [¶] Lessor: JOHN ROHRS AND VERA B. ROHRS, AS TRUSTORS UNDER DATE OF MAY 16, 1961 [¶] Lessee: WARMINGTON DEVELOPMENT, INC., [¶] Recorded: MAY 9, 1975 IN BOOK 11397 PAGE 783 OF OFFICIAL RECORDS [¶] AN AGREEMENT TO AMEND OR MODIFY CERTAIN PROVISIONS OF SAID LEASE, AS SET FORTH THEREIN: [¶] LESSOR: WARMINGTON DEVELOPMENT INC., A CALIFORNIA CORPORTATION [¶] LESSEE: L.GLENN STURGIS AND MARY E. STURGIS, HUSBAND AND WIFE AS JOINT TENANTS [¶] RECORDED: JANUARY 21, 1976, IN BOOK 11625 PAGE 1649, OFFICIAL RECORDS [¶] The present ownership of the leasehold created by said lease and other matters affecting the interest of the lessee are not shown herein."

During the hearing on the demurrer, the court noted, ". . . and now the lease assessment goes up to $2,000 a month, but it doesn't go to title — that issue does not go to title; that issue goes to value of the property." The trial court sustained the demurrer without leave to amend, and ordered the action dismissed with prejudice.

II

DISCUSSION

A trial court's action sustaining a demurrer presents a pure question of law which we review de novo. (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10.) "'A demurrer tests only the legal sufficiency of the pleading. [Citation.] It "admits the truth of all material factual allegations in the complaint . . . ; the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court."' [Citation.]" (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 47.) We independently examine the complaint to determine whether the facts alleged state a cause of action under any legal theory.

3

(*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)[1]

Appellant states in her brief that "[a] title insurer's task is to comb the record to determine whether recorded or filed legal documents create a cloud on their insured's title," but cites no authority to support her statement. She also argues some language in "Attachment One" to the title policy "provides coverage for risks created by litigation affecting the insured property, provided that no lis pendens has been recorded." Having failed to support her points with legal authority, these arguments are forfeited. (*Roden v. AmerisourceBergen Corp.* (2010) 186 Cal.App.4th 620, 648.)

Appellant contends she is entitled to coverage under three sections of her title policy. Under the section entitled "**COVERED RISKS**," there are 32 risks listed. Item 2 states: "Someone else has rights affecting Your Title because of leases, contracts, or options." Item 13 states: "Your Title is lost or taken because of a violation of any covenant, condition or restriction, which occurred before You acquired Your Title, even if the covenant, condition or restriction is excepted in Schedule B." Item 29 states: "Your Title is unmarketable, which allows someone else to refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it."

Analysis of a written contract starts with an examination of its language. (Civil Code § 1639.) The first issue is whether the claim falls within the scope of the basic coverage of the policy, and the insured bears the burden to prove that issue. (*Golden Security Thrift & Loan Assn. v. First American Title Ins. Co.* (1997) 53 Cal.App.4th 250, 255.) "[E]xclusionary clauses are interpreted narrowly, whereas clauses identifying coverage are interpreted broadly." (*Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406.)

---

[1] We note the trial court permitted appellant to file an amended complaint when respondent filed a demurrer to the original complaint. We further note, there has been no request from appellant to amend her pleading again, nor any showing what another amendment might accomplish.

"'The words "good title" import that the owner has the title, legal and equitable, to all the land, and the words "defective title" mean that the party claiming to own has not the whole title, but some other person has title to a part or portion of the land.' [Citations.]" (*Hocking v. Title Ins. & Trust Co.* (1951) 37 Cal.2d 644, 649.) In *Hocking*, the plaintiff alleged she purchased two unimproved lots and received a grant deed therefor. A month later, she purchased a title insurance policy. (*Id.* at pp. 645-646.) As it turned out, plaintiff was not able to use the lots in the way she intended. The California Supreme Court noted it is elementary that "'[o]ne can hold perfect title to land that is valueless; one can have marketable title to land while the land itself is unmarketable.'" (*Id.* at p. 651.) The high court concluded: "Although it is unfortunate that plaintiff has been unable to use her lots for the building purposes she contemplated, it is our view that the facts which she pleads do not affect the marketability of her *title* to the land, but merely impair the market *value* of the property. She appears to possess fee simple title to the property for whatever it may be worth; if she has been damaged by false representations in respect to the condition and value of the land her remedy would seem to be against others than the insurers of the title she acquired. It follows that plaintiff has failed to state a cause of action under the title policy." (*Id.* at p. 652.)

In *Lick Mill Creek Apartments v. Chicago Title Ins. Co.* (1991) 231 Cal.App.3d 1654, the plaintiff purchased land contaminated by hazardous substances. The California Department of Health ordered the property owner to remedy the toxic contamination. (*Id.* at p. 1657.) That court also ruled against the plaintiff, concluding: "We find no ambiguity in the insuring clause: defendants are obligated to insure plaintiffs against unmarketability of title on the subject property. Because marketability of title and the market value of the land itself are separate and distinct, plaintiffs cannot claim coverage for the property's physical condition under this clause of the insurance policies." (*Id.* at p. 1662.)

5

"An insurance company may limit the coverage of a policy issued by it. When it has done so, the plain language of the limitation must be respected. [Citation.]" (*Safeco Title Ins. Co. v. Moskopoulos* (1981) 116 Cal.App.3d 658, 666.) Any limitation on coverage must be "conspicuous, plain and clear." (*Travelers Property Casualty Co. of America v. Superior Court* (2013) 215 Cal.App.4th 561, 575.)

Here the first page of the policy states: "The Policy insures You against actual loss resulting from certain Covered Risks. These Covered Risks are listed beginning on page 3 of the Policy. The Policy is limited by: [¶] Provisions of Schedule A [¶] Exceptions in Schedule B." The limitation concerning the lease at issue here is listed on the first page of schedule B. No reasonable construction of this policy could yield the conclusion the limitation of coverage for the lease is anything but conspicuous, plain and clear.

III

DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.

6