## SOMERSET SAVINGS BANK *vs*. CHICAGO TITLE INSURANCE COMPANY.

Suffolk. January 11, 1995. - May 19, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Practice, Civil,* Summary judgment. *Insurance,* Title insurance, Construction of policy, Coverage. *Real Property,* Title insurance, Encumbrance. *Negligence,* Standard of care, Title insurance company.

In a civil action, the defendant title insurer was entitled to summary judgment on the plaintiff's breach of contract claims, where, under the terms of the policy in question, there was no coverage for the existence of a statutory restriction, namely G. L. c. 40, § 54A, on the use of the land [427-429], nor did the insurer have any duty to examine and analyze the status of the title and report to the plaintiff [429-430].

In an action asserting claims of negligence based on a title insurer's alleged failure to use due care in the exercise of its duties to search title and to disclose any matters of record to the insured, the grant of summary judgment was not appropriate where there was a dispute of fact whether the defendant voluntarily assumed, outside of the title insurance policy, such a duty on the plaintiff's behalf. [430-432]

CIVIL ACTION commenced in the Superior Court Department on February 14, 1991.

The case was heard by *Patti B. Saris, J.,* on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Brian M. Hurley* for the defendant.

*David L. Klebanoff* for the plaintiff.

*E. Randolph Tucker & Thomas R. Marton,* for American Land Title Association & others, amici curiae, submitted a brief.

LYNCH, J. This case involves breach of contract and negligence claims arising from a title insurance policy issued to

the plaintiff by the defendant. The plaintiff alleged that the defendant failed to honor its contract to indemnify the plaintiff for a loss allegedly covered by the title insurance policy. The plaintiff also asserts claims of negligence and negligent misrepresentation based on the defendant's alleged failure to use due care in the exercise of its duties to search title, and to disclose any matters of record to the insured.

A Superior Court judge allowed the defendant's motion for summary judgment and dismissed the plaintiff's complaint. The plaintiff filed a timely notice of appeal. The Appeals Court vacated the summary judgment and remanded the case for further proceedings after concluding that the issue whether there was coverage under the terms of the policy remained unresolved. 37 Mass. App. Ct. 82, 91 (1994). The Appeals Court also concluded that there was an issue whether the defendant was obligated, and to what extent, to examine the title to the property and to disclose relevant matters because it was a custom and practice of insurers to do so. *Id.* We granted the defendant's application for further appellate review. We affirm the allowance of summary judgment on the breach of contract claims. We vacate the allowance of summary judgment on the negligence claims and remand the case to the Superior Court for further proceedings.

The following facts are undisputed. In 1986, the plaintiff agreed to finance the site acquisition and construction of a seventy-two unit condominium located at 190 North Shore Road in Revere. As security for its financing, the plaintiff became the holder of a note in the amount of $9.5 million, secured by a mortgage on the land and any improvements.[1] The plaintiff hired the law firm of Grant & Artesani, P.C. (law firm), to assist in closing the transactions. The law firm was to search the record to assure that the mortgage interest was free from defect and to certify to the plaintiff with respect to this matter. The law firm gave a favorable title certi-

---

[1]The plaintiff gave two loans for the property. The first loan was given for the purchase of the property; the second loan, which was given in May of 1987, was a construction loan for $9.5 million.

fication to the plaintiff. The plaintiff also requested that the law firm obtain a title insurance policy. The law firm was an approved agent of the defendant and was authorized to issue policies up to $500,000. With respect to the plaintiff's construction loan, after securing authorization, the law firm issued to the plaintiff a loan policy of the defendant in the face amount of $9.5 million. Pursuant to an agreement between the defendant and the law firm, the law firm was authorized to validate, to countersign, to issue, and to deliver commitments, policies, and endorsements of the defendant on forms provided by the defendant.

In June of 1987, the city of Revere issued a building permit to the owner of 190 North Shore Road to construct the condominium project. On June 3, 1988, the Attorney General requested that Revere order a halt to the construction on the property because the Executive Office of Transportation and Construction (EOTC) had not consented to the issuance of the building permit as required by G. L. c. 40, § 54A (1992 ed.).[2] Therefore, on June 8, 1988, Revere issued a cease and desist order directed to the owner of the property to halt construction.

All or part of the property located at 190 North Shore Road was owned by the Boston and Maine Railroad in 1926. This information was apparent on the record at the registry of deeds.

The title insurance policy issued to the plaintiff, policy number 22-0468-02-000026, provides, in pertinent part:

> "SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS CONTAINED IN SCHEDULE B AND THE PROVISIONS OF THE

_____

[2]General Laws c. 40, § 54A (1992 ed.), provides in pertinent part: "If a city or town or any other person purchases any lands formerly used as a railroad right-of-way or any property appurtenant thereto formerly used by any railroad company in the commonwealth, no permit to build a structure of any kind on land so purchased shall be issued by any city or town in the commonwealth without first obtaining, after public hearing, the consent in writing to the issuance of such permit from the secretary of the executive office of transportation and construction."

CONDITIONS AND STIPULATIONS HEREOF, CHICAGO TITLE INSURANCE COMPANY . . . insures . . . against loss or damage . . . sustained or incurred by the insured by reason of:

"(1) Title to the estate or interest described in Schedule A being vested otherwise than as stated therein;

"(2) Any defect in or lien or encumbrance on such title . . .

"(4) Unmarketability of such title . . . ."

The policy contained an integration clause which provides:

"This instrument together with all endorsements and other instruments, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company.

"Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or any action asserting such claim, shall be restricted to the provisions and conditions and stipulations of this policy."

The exclusions from coverage provides in pertinent part as follows:

"(1) (a) Governmental police power.

"(b) Any law, ordinance or governmental regulation relating to environmental protection.

"(c) Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement

now or hereafter erected on the land, or prohibiting a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part.

"(d) The effect of any violation of the matters excluded under (a), (b) or (c) above, unless notice of a defect, lien or encumbrance resulting from a violation has been recorded at Date of Policy in those records in which under state statutes, deeds, mortgages, lis pendens, liens or other title encumbrances must be recorded in order to impart constructive notice to purchasers of the land for value and without knowledge; provided, however, that without limitation, such records shall not be construed to include records in any of the offices of federal, state or local environmental protection, zoning, building, health or public safety authorities."

On November 16, 1990, the plaintiff gave the defendant notice of claims under the title insurance policy. The defendant denied coverage on the ground that the effect of G. L. c. 40, § 54A, was not an insured risk under the policy and further denied that it had any obligations or duties to the plaintiff beyond those specified in the policy. The plaintiff commenced this action against the defendant asserting claims for breach of contract (counts I and IV), negligence (counts II and III), and negligent misrepresentation (count V). The defendant moved for summary judgment on all claims.

Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983). Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The party opposing the motion must respond by alleging specific facts which establish the

existence of a dispute of material fact in order to defeat the motion. *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989).

The judge began her analysis of the contract claims with the observation that, in general, building and zoning laws are not treated as encumbrances. She went on to rule: "Even assuming, however, that the restriction on use created by G. L. c. 40, § 54A is an encumbrance on the property or renders title unmarketable, there is no coverage under the policy because the exclusions clearly apply." The Appeals Court interpreted the judge's action as an expression of doubt on whether coverage existed, and only discussed the applicability of the policy exclusions. We begin our discussion with consideration of the coverage issue.

*CONTRACT CLAIMS*

*Count I.* In support of its claim for breach of contract (count I), the plaintiff contends that the provision in G. L. c. 40, § 54A, which requires that EOTC consent to the owner's intended use of the property, constitutes an encumbrance on or defect in the title to the property or that it renders title to the property unmarketable. As a general rule, a dispute concerning the proper interpretation of an insurance policy raises only a question of law. *Massachusetts Bay Transp. Auth.* v. *Allianz Ins. Co.*, 413 Mass. 473, 476 (1992), citing *Nelson* v. *Cambridge Mut. Fire Ins. Co.*, 30 Mass. App. Ct. 671, 673 (1991). In interpreting the provisions of a policy, we construe and enforce unambiguous terms according to their plain meaning. See *Thomas* v. *Hartford Accident & Indem. Co.*, 398 Mass. 782, 784 (1986); *Royal-Globe Ins. Co.* v. *Schultz*, 385 Mass. 1013 (1982). When the provisions of a policy are plainly and definitively expressed, the policy must be enforced in accordance with the terms. See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). Absent ambiguous contractual language in the policy, custom and practice evidence cannot be used to vary the provisions of the policy. See *Newell-Blais Post #443, Veterans of Foreign Wars of the U.S., Inc.* v. *Shelby Mut. Ins. Co.*, 396 Mass. 633, 638 (1986) (language clear and unambiguous; recourse to extrinsic evidence not re-

quired); *Nilsen* v. *Mutual Marine Office, Inc.*, 428 F. Supp. 1375, 1378-1380 (D. Mass. 1977). However, pertinent custom and usage are, by implication, incorporated into a policy and are admissible to aid in policy interpretation, not as tending to contradict or vary a contract, but on the theory that usage forms part of the contract. See *Affiliated FM Ins.* *Co.* v. *Constitution Reinsurance Corp.*, 416 Mass. 839, 845 (1994), and authorities cited. In the final analysis, however, express terms are to be given preference in interpretation over course of performance and usage of trade. See Restatement (Second) of Contracts § 203 (b) (1981).

It is well established that building or zoning laws are not encumbrances or defects affecting title to property. See *Dover Pool & Racquet Club, Inc.* v. *Brooking*, 366 Mass. 629, 631 (1975); *Silverblatt* v. *Livadas*, 340 Mass. 474, 479 (1960). Such restrictions are concerned with the use of the land. See *Marathon Builders, Inc.* v. *Polinger*, 263 Md. 410, 418-419 (1971). There is a difference between economic lack of marketability, which concerns conditions that affect the use of land, and title marketability, which relates to defects affecting legally recognized rights and incidents of ownership. See *Chicago Title Ins. Co.* v. *Kumar*, 24 Mass. App. Ct. 53, 56-57 (1987). An individual can hold clear title to a parcel of land, although the same parcel is valueless or considered economically unmarketable because of some restriction or regulation on its use. See *id.* at 57, citing *Hocking* v. *Title Ins. & Trust Co.*, 37 Cal. 2d 644, 651 (1951). A title insurance policy provides protection against defects in, or liens or encumbrances on, title. See *Chicago Title Ins. Co.* v. *Kumar*, *supra* at 56. Such coverage affords no protection for governmentally imposed impediments on the use of the land or for impairments in the value of the land.

General Laws c. 40, § 54A, regulates land use. The requirement of EOTC approval, prior to the issuance of a building permit, is a restriction on the use of the property, but it does not affect the owner's title to the property. It is a restriction that may affect the value of the property and the

marketability of the parcel, but it has no bearing on the title to the property.

The insurance policy provided coverage for losses sustained as the result of a defect in or lien or encumbrance on the title to the property and for unmarketability of the title. Although they may have impaired the property's market value or caused a halt to construction on the property, the requirements of G. L. c. 40, § 54A, have no effect on the marketability of the title nor did they create a defect, lien, or encumbrance on the title. The existence of the statutory restriction, therefore, does not give rise to coverage under the policy.

In light of the unambiguous coverage terms of the policy, we do not look beyond the four corners of the policy concerning whether coverage is customarily available with respect to such right-of-way statutes. We also conclude that, to the extent it is material, there is no evidence the circumstances surrounding issuance of the policy created a reasonable expectation in the plaintiff that it acquired more extensive coverage than that stated in the policy.[3] Summary judgment was appropriately granted for the defendant on count I.

Our conclusion renders it unnecessary to consider, as did the judge and the Appeals Court, whether the policy exclusions, particularly (c), excluding from coverage the effects of "[a]ny law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land," and clause (d) withdrawing exclusions (a), (b), or (c) under certain circumstances, bar coverage of the plaintiff's claim.

*Count IV.* The plaintiff also alleges that the defendant failed to examine, review, and analyze the title to the premises and to notify the plaintiff of any facts regarding title.

[3]The evidence presented by the plaintiff, with respect to its reasonable expectations, focuses on the belief that right-of-way statutes are normally delineated as an exception to coverage. However, even if such a practice was accepted, the failure to include such a statute as an exclusion does not mean that coverage is available, where the express policy terms do not provide for coverage.

We agree with the judge, as apparently did the Appeals Court, that no such contractual obligation exists. The plaintiff did not request a report from the defendant regarding the status of title to the property. The defendant was not employed to examine the title, rather, the plaintiff purchased a policy to insure against existing defects and encumbrances on the title. The defendant has demonstrated that proof of a contract to examine and analyze the status of the title, an essential element to the plaintiff's claim for breach of contract in count IV, is unlikely to be presented at trial. Therefore, summary judgment was appropriately granted for the defendant on count IV.

*Negligence claims.* The judge ruled that the defendant had no duty to disclose the prior use of the property as a railroad right-of-way or the applicability of G. L. c. 40, § 54A, and further ruled that the defendant had not voluntarily assumed such a duty. Therefore, the judge granted summary judgment for the defendant on the plaintiff's negligence claims. The Appeals Court concluded that, whether the defendant had assumed an obligation, not cast on it by the terms of the policy, to disclose matters affecting the property that an examination of the registry would reveal is a matter for further development. We conclude that the granting of summary judgment was not appropriate on these claims because there is a factual dispute whether the defendant voluntarily assumed a duty to inform the plaintiff of these matters.

The plaintiff argues that the issuance of a policy places a duty on a title insurance company to search for, and to disclose to the insured, any reasonably discoverable information that would affect the insured's decision to proceed with the purchase. As a general rule, we decline to impose such a duty. A title insurance company's duty to the insured is governed by the terms of the policy. See *Walker Rogge, Inc.* v. *Chelsea Title & Guar. Co.*, 116 N.J. 517, 535 (1989). Its liability is limited to the policy, and it will not be liable for negligence in searching the records. *Id.* However, if the title insurance company agrees to conduct a search and to provide the insured with an abstract of title, it may expose itself to

liability for negligence as a title searcher, in addition to any liability under the policy. See *Focus Inv. Assocs.* v. *American Title Ins. Co.*, 992 F.2d 1231, 1235-1236 (1st Cir. 1993), and cases cited. A title insurance company thus may be found liable on a negligence claim if the act complained of was a direct result of duties voluntarily assumed by the insurer, in addition to the contract to insure title. *Brown's Tie & Lumber Co.* v. *Chicago Title Co.*, 115 Idaho 56, 59 (1988). The plaintiff met its burden in opposition to the allowance of summary judgment on this issue. It offered evidence that the defendant's advertising claimed knowledge of local laws and practices, and might fairly be interpreted as an assurance that all matters recorded at the registry which might influence the decision to buy the property would be called to the insured's attention. This evidence might warrant the finding that the defendant assumed a duty to notify the plaintiff of the applicability of the provisions of § 54A.

We reject the defendant's argument that it cannot be liable for any loss or damage resulting from its negligence because of the language in the policy's integration clause, which limits liability to the provisions and conditions set forth in the policy. In most instances, an insurance contract is not a negotiated agreement, rather its conditions are predominantly dictated by the insurance company to the insured. *Darcy* v. *Hartford Ins. Co.*, 407 Mass. 481, 489-490 (1990). In this context, we must look at whether the clause exculpating the defendant from loss arising from its own negligence is unfair or unconscionable. See *Minassian* v. *Ogden Suffolk Downs, Inc.*, 400 Mass. 490, 492 (1987). This analysis requires a balancing of the freedom of contract against possible harm to the public resulting from allowing such exculpation. See *Jackson* v. *First Nat'l Bank*, 415 Ill. 453, 459-460 (1953). In recognition of the needs and expectations of the purchaser of the policy, his or her lack of bargaining power, and the public policy implications of allowing such a disclaimer of liability, we conclude that a claim based on a breach of duty to exercise due care in notifying an insured of

matters discovered in a title search voluntarily assumed outside the policy is not barred by the integration clause.

Summary judgment on the plaintiff's contract claims (counts I and IV) is affirmed. Summary judgment is vacated, with respect to counts II, III and V, and the action is remanded for further proceedings consistent with this opinion.

*So ordered.*