Brady, J.
Plaintiff George A. Hughes (Hughes) brings this claim for benefits under the terms of a group policy issued to the University of Massachusetts (the University) by defendant Boston Mutual Life Insurance Company (Boston Mutual). Boston Mutual now seeks summaryjudgment on the ground that an unambiguous preexisting condition clause excludes coverage under the policy. After consideration of the oral arguments and written submissions, for the following reasons, Boston Mutual’s motion is DENIED in part, and summaryjudgment will be rendered against Boston Mutual in part.
BACKGROUND
The material facts are treated as undisputed for purposes of this motion. Hughes was employed by the University on November 1, 1987, and at that time, he applied for enrollment in a group disability income insurance policy maintained by the University and issued by Boston Mutual. Hughes became eligible for enrollment in the policy after 90 days of employment, and was enrolled on February 1, 1988. Also in February 1988, shortly after enrolling in the plan, Hughes suffered an acute attack of multiple symptoms from a cause that was then unknown. His condition was diagnosed as multiple sclerosis in late April or early May 1988, and eventually rendered him totally disabled. Boston Mutual denied Hughes’ claim for disability benefits on November 17, 1988.
The policy contained a preexisting condition exclusion providing that:
This policy will not cover any total disability:
1. which is caused or contributed to by, or results from a pre-existing condition; and
2. which begins in the first 12 months after the insured’s effective date, unless he received no treatment of the condition for 6 consecutive months after his effective date.
“Treatment” means consultation, care or services provided by a physician including diagnostic measures and taking prescribed drugs and medicine.
“Pre-existing Condition” means a sickness or injury for which the insured received treatment within 6 months prior to the insured’s effective date.
Hughes had been seen on June 2, 1987 by Dr. Paul Dunn, an ophthalmologist, for a complaint of temporary loss of vision in his right eye. Dr. Dunn’s records indicate that he formed an impression that Hughes might be suffering from multiple sclerosis; he later testified that his impression was no more than a “vague nebulous idea” and that he could not have made a diagnosis at that time with a reasonable degree of medical certainty.
Hughes was seen on August 13, 1987 by Dr. Daniel Sullivan, an internist, for complaints of bowel problems and loss of balance. Dr. Sullivan noted that Hughes had a history of bowel problems, and prescribed Benthyl for a hyperactive bowel. Dr. Sullivan did not attribute any of Hughes’ symptoms to multiple sclerosis, and later testified that Hughes’ experience with loss of balance could have been attributable to his earlier alcoholism; further, Dr. Sullivan testified that he could not have made a diagnosis of multiple sclerosis at that time, based on Hughes’ symptoms.
Hughes was seen by Dr. Jeremy Worthington, a neurologist, on March 10, 1988. Hughes reported recent loss of vision, a history of numbness and clumsiness in his legs, and chronic fatigue. Dr. Worthington immediately suspected, and determined in late April or early May, 1988, on the basis of further tests done, that Hughes probably had multiple sclerosis. In his deposition, Dr. Worthington testified that based on his diagnosis of multiple sclerosis, he would fairly say that Hughes did have multiple sclerosis for *410 some period of time before March 1988. Dr. Worthington further testified that the loss of balance that Hughes suffered in August 1987 was not inconsistent with, and he believed that it was the result of, multiple sclerosis, or it could have been the result of his prior drinking. Dr. Worthington stated that loss of balance is a very non-specific complaint that, alone, would not be enough to establish the existence of multiple sclerosis. In addition, Dr. Worthington testified that irritable bowel symptoms aren’t even suggestive of multiple sclerosis.
On May 31, 1988, Hughes was seen by Dr. David Dawson at the Multiple Sclerosis Clinic and Research Unit at Brigham and Women’s Hospital. Dr. Dawson later testified that, based on Hughes’ description of symptoms he had suffered in February 1987, viewed in the context of a later clinical diagnosis, Hughes’ multiple sclerosis had certainly began by February 1987 and probably began during the eight years before that. Further, according to Dr. Dawson, Hughes’ symptoms in February 1987 were, with a reasonable medical certainly, manifestations of multiple sclerosis. However, Dr. Dunn testified that Hughes’ symptoms in June, 1987, were not clearly related to the those experienced in February 1987. In addition, Dr. Dawson testified that he had no opinion as to whether Hughes’ multiple sclerosis was diagnosable or not prior to the time that he saw him in May 1988. In a later affidavit, Dr. Dunn offers his opinion that when Hughes was treated by Dr. Sullivan in August 1987, he was treated for the symptoms of multiple sclerosis, even though no clinical diagnosis had yet been made.
PROCEDURAL BACKGROUND
Hughes first filed his complaint against Boston Mutual for breach of contract and violation of G.L.c. 93A and c. 176D in the Suffolk County Superior Court on November 19, 1990. Boston Mutual removed the case to the U.S. District Court for the District of Massachusetts under the provisions of the federal ERISA statute. On August 27, 1993, the District Court (Woodlock, J.) allowed Boston Mutual’s motion for summary judgment after Hughes failed to submit a responsive filing to rebut Dr. Dawson’s opinion that Hughes was treated in August, 1987, for the symptoms of multiple sclerosis, even though no clinical diagnosis had yet been made. Hughes v. Boston Mutual Life Ins. Co., No. 91-10179-WD (D.Mass. August 1993).
On appeal to the United States Court of Appeals for the First Circuit, the Court of Appeals ruled that the preexisting condition exclusion was ambiguous, and adopted for the purposes of the summaiy judgment motion Hughes’ interpretation that the exclusion required some awareness on the part of the physician or the insured that the insured is receiving treatment for the condition itself. Hughes v. Boston Mutual Life Ins. Co., 26 F.3d 264, 269-70 (1994). The Court vacated the District Court’s decision and remanded the case for further proceedings to determine whether Hughes had received treatment “for” multiple sclerosis during the six months before the effective date of the policy. Id. at 270.
On remand, the District Court determined that it did not have jurisdiction to hear the matter because ERISA did not apply to the policy at issue, a “governmental plan,” and remanded the case to this court for further proceedings.
DISCUSSION
This court will grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983). A moving party who does not bear the burden of proof at trial must affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles them to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). This may be done either by submitting affirmative evidence negating an essential element of the opposing party’s case or by showing that the opposing party is unlikely to submit proof of that element at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Boston Mutual maintains that it is entitled to judgment as a matter of law because the undisputed facts demonstrate that Hughes was suffering from multiple sclerosis before the effective date of the policy, and that he was treated for symptoms of the multiple sclerosis during the critical six month period before that effective date. Thus, Boston Mutual’s argument continues, Hughes’ claim is barred by the unambiguous language of the preexisting condition exclusion. Hughes, on the other hand, argues that the policy’s definition of a preexisting condition is ambiguous and the policy should be read to require that his multiple sclerosis must have been explicitly diagnosed in order for him to have been treated “for” the disease.
In considering these same arguments, the Court of Appeals for the First Circuit concluded that the differing interpretations were both reasonable and, construing the ambiguity against the insurer, adopted Hughes’ reading of the exclusion. Hughes v. Boston Mutual Life Ins. Co., supra, 26 F.3d at 270-71. Unfortunately, the Court of Appeals’ opinion is not particularly illuminating for purposes of the motion now before this court, because, although the federal courts normally look to the law of a particular state to guide its construction of a contract, “a federal common law of rights and obligations governs the interpretation of an ERISA-regulated group insurance plan.” Id. at 269 (internal quotation omitted). Thus, unlike the Court of Appeals, this court must look to Massachusetts *411 law for assistance in determining the correct construction.
A dispute concerning the proper interpretation of an insurance contract generally raises only a question of law. Somerset Savings Bank v. Chicago Title Insurance Co., 420 Mass. 422, 427 (1995). Where the words of an insurance contract are plain and free from ambiguity they must be construed in their usual and ordinary sense, according to the fair meaning of the language used as applied to the subject matter. Jacobs v. United States Fidelity & Guaranty Co., 417 Mass. 75, 76-77 (1994). Ambiguity in the language of an insurance contract is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other. Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995). The court concludes that the policy language in question, set forth at page 2, above, is free from ambiguity. Knowledge of the existence of multiple sclerosis was not required; indeed, the definition of “treatment’ for purposes of the preexisting condition exclusion expressly includes diagnostic measures, but does not require an actual diagnosis.
In construing the insurance contract, the court may consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered. Hazen Paper Co. v. United States Fidelity & Guaranty Co., 407 Mass. 689, 700 (1990). The court concludes that an objectively reasonable insured would expect that if, in retrospect, a sickness or injury existed during the critical time period, then that insured could expect that he could be treated “for” that sickness or injury, even if no actual diagnosis had been made. In Dowdall v. Commercial Travelers Mutual Accident Ass'n, 344 Mass. 71 (1962), the Supreme Judicial Court considered the point at which a sickness or disease may be considered to have originated, that is, to exist. The court noted that ‘[t]he mere presence of latent germs or seeds of illness in the body prior to the issuance of [a disability benefits] policy would not preclude recovery," and went on to apply the test for construing policies of this type that “the origin of a sickness or disease is deemed to be the time when it first becomes manifest or active, or when there is a distinct symptom or condition from which one learned in medicine can diagnose the disease.” Id. at 74.
As applied to the facts in this case, the court concludes that summary judgment is inappropriate as to the first prong of the test because genuine issues exist concerning the time when Hughes’ multiple sclerosis first became manifest or active, and further, even if Hughes’ multiple sclerosis did then exist, whether or not the complaints that Hughes was treated for by Dr. Sullivan in August 1987 were in fact manifestations or symptoms of his later-diagnosed multiple sclerosis. However, as to the second prong of the test, which the court rules does not allow a retrospective view but must consider from the doctor’s point of view at the time of treatment, Boston Mutual has presented no evidence to show that prior to May 1988, Hughes suffered a distinct symptom or condition from which “one learned in medicine” could have diagnosed[1] his condition as being multiple sclerosis. For this reason, the court will enter summary judgment against Boston Mutual as to this prong of the test. See Mass.R.Civ.P. 56(c).
ORDER
For the foregoing reasons, it is hereby ORDERED that Boston Mutual Life Insurance Company’s (Boston Mutual) motion for summary judgment is DENIED. It is further ORDERED that summary judgment shall enter against Boston Mutual to the extent that it seeks to demonstrate, by showing that “there was a distinct symptom or condition from which one learned in medicine could have diagnosed the disease,” that George A. Hughes’ multiple sclerosis existed prior to the effective date of the policy.

The court rules that Dr. Dunn’s “impression," which he later described as being no more than a “vague, nebulous idea” is, as a matter of law, insufficient to survive at the summary judgment stage.