Kottmyer, J.
At issue in this action is whether a title insurance company is liable in contract, tort, and under G.L.c. 93A and G.L.c. 176D for failing to disclose the existence of dragnet clauses in senior mortgages excluded from coverage under the policy. The parties have filed cross-motions for summary judgment. For the following reasons, the defendant’s motion for summary judgment is ALLOWED and plaintiffs cross-motion for summary judgement is DENIED.
BACKGROUND
The following are the undisputed material facts from the summary judgment record:
In 1990, Triad Finance Corporation (“Triad”) was considering making a loan to Jose and Annmarie Pereira, who intended to secure payment on their promissory note to Triad with a mortgage on five pieces of real property. Triad requested its attorney, R. David Cohen (“Cohen”), who was also an authorized agent for defendant First American Title Insurance Company (“First American”), to represent it in the transaction and to issue a title insurance policy on the five mortgaged properties. Cohen conducted an examination of the title to the properties, but did not read the terms of senior mortgages. Cohen then prepared the title insurance policy.
On July 27, 1990, after the Triad loan closed, Cohen issued to Triad a First American title insurance policy in the amount of $275,000 covering the mortgaged property. The Triad policy states in part: “SUBJECT TO . . . THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B(,] . . . FIRST AMERICAN . . . insures . . . against loss or damage . . . sustained or incurred by the insured by reason of: . . . Any defect in or lien or encumbrance on the title.” Schedule B of the Triad policy further reads:
This policy does not insure against loss or damage by reason of any of the following:
Property 1: mortgage to [Luso] in the original amount of $30,000.00.
Property 2: mortgage to [Luso] in the original amount of $75,000.00.
Property 3: mortgage to St. Joseph’s Credit Union in the original amount of $45,000.00 and mortgage to [Luso] in the original amount of $40,000.00.
Property 4: mortgage to [Luso] in the original amount of $100,000.00.
Property 5: mortgage to George Peabody Cooperative Bank in the original amount of $100,000.00, and second mortgage to Blue Hill Federal Credit Union in the original amount of $50,000.00.
The exclusion does not state that each of the senior mortgages held by the Luso American Credit Union (“Luso”) contained a dragnet clause which provided as follows:
It is agreed that this mortgage is security for payment for the aforesaid obligation and all other direct and contingent liabilities of the Mortgagor hereof to the Holder hereof due or to become due, whether now existing or hereafter contracted.
Operation of the dragnet clause wipes out any equity in the properties available to junior mortgagees such as Triad.
In June 1991, Robert Pace, the sole shareholder of plaintiff Private Lending & Purchasing, Inc. (“Private Lending”), made a $75,000 loan to the Pereiras. To secure payment of their note to Pace, the Pereiras granted Pace mortgages on the five properties mortgaged to Triad and a sixth property. Pace retained Cohen to represent him in connection with this loan. Pace also requested Cohen, as agent of First American, to issue a title insurance policy in the amount of $75,000 on the mortgaged properties.[1] Before closing Pace’s loan, Cohen conducted an examination of the title to the Pace mortgaged properties. Before the loan was made, neither Pace nor Cohen read the senior mortgages. Pace relied upon Cohen to determine the amount of encumbrances on the senior mortgages, to make sure that he was adequately secured and to advise him of any problems or concerns with respect to the title to the mortgaged properties. (Pace Dep. p. 40, 43, 50.) In reliance on Cohen’s review of the title to the mortgaged properties, Pace believed he had adequate security. (Pace Dep. p. 53-54.) On June 19, 1991, after the Pace loan closed, Cohen issued a First *597 American title insurance policy to Pace. Schedule B to the Pace policy lists the exclusions on properties identified as 1 through 5 using language identical to that which appears in Schedule B to the Triad policy and, in addition, excludes:
Property 6: mortgage to [Luso] in the original amount of $75,000.
Properties 1 through 5: mortgage to [Triad] in the original amount of $275,000.
Like the Triad policy, the Pace policy does not disclose the existence or effect of the dragnet provisions in the Luso mortgage. Both the Triad and Pace policies provide in the Exclusions From Coverage section:
The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorney’s fees or expenses which arise by reason of. . . [djefects, liens, encumbrances, adverse claims or other matters ... created, suffered, assumed or agreed to by the insured claimant. . .
Before February 1993, Private Lending purchased the Pace loan from Pace. In February 1993, Private Lending learned that the Luso mortgages were cross-collat-eralized, and the following month, it informed First American of this fact. In September 1993, Private Lending purchased the Triad loan with knowledge that the properties securing the Triad loan were subject to the dragnet clauses in the Luso mortgages.[2]
After foreclosure, the proceeds of the mortgaged properties were insufficient to pay the Pace and Triad loans held by Private Lending. Private Lending submitted a claim to First American for losses. First American denied claims under both the Triad and Pace policies.
Complaining that First American should have disclosed to Triad and Pace the existence of the dragnet clause in the Luso mortgages, Plaintiff filed this action alleging breach of contract (Count I), negligent misrepresentation (Count II), negligence (Count III), and violation of G.L.c. 176D and 93A (Count IV). Defendant now moves for summary judgment on all counts of the complaint, and plaintiff cross-moves for summary judgment on its contract claim.
DISCUSSION
The court may grant summary judgment when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and (further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-7 (1989). If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact to defeat the motion. Id. at 17. “The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. THE TRIAD TITLE POLICY
First American is entitled to summary judgment on all claims arising out of the Triad policy. The policy expressly provides that First American will not pay damages arising by reason of encumbrances, adverse claims or other matters “created, suffered, assumed or agreed to” by the insured claimant. It is undisputed that plaintiff purchased the Triad loans (which were in default) for 55% of their face value with knowledge of the existence and effect of the cross-collateralization clauses in the Luso mortgages. To the extent that plaintiff suffered a loss because the proceeds of the properties securing the Triad loans were applied to the Luso indebtedness, plaintiff created the loss and assumed the encumbrance by purchasing the Triad loans with actual knowledge that the obligees were insolvent, that there were cross-collateralization clauses in the Luso mortgages and there was insufficient equity in the secured properties. Contrary to plaintiffs argument nothing in the plain language of this exclusion limits its effect to bad faith or fraud, as opposed to intentional conduct by the insured claimant. See Joel E. Smith, Annotation, Title Insurance: Exclusion of Liability for Defects, Liens, or Encumbrances Created, Suffered, Assumed, or Agreed to by the Insured, 87 A.L.R.3d 515 (1978).
II. THE PACE TITLE POLICY 1. THE CONTRACT CLAIM
Generally, a dispute concerning the proper interpretation of an insurance policy raises only a question of law for the court. Somerset Savings Bank v. Chicago Title Insurance Company, 420 Mass. 422, 427 (1995). The Court construes and enforces unambiguous terms according to their plain meaning. Id. Doubts created by ambiguous terms in a policy are to be resolved against the insurer; exclusionary clauses must be strictly construed against the insurer. Jefferson Insurance Co. of New York v. National Union Fire Insurance Co., 42 Mass.App.Ct. 94, 97-8 (1997). The insurer bears the burden of proving that a claim falls within the exclusions of a policy. Rajchandra Corp. v. Title Guar. Co., 558 N.Y.S.2d 1001, 1004 (A.D. 3 Dept. 1990).
The parties dispute whether the Pace policy excepts from coverage claims for losses arising out of operation of the dragnet clause.[3] Plaintiff urges this Court to limit each exclusion to the specific amount listed as the “original amount” of the mortgage, on the ground that the exclusion does not accurately state the true extent of the encumbrance. The plaintiff relies on Chrysler v. First Financial Services Corp. of Amer., 595 N.Y.S.2d 302 (S.Ct. Nassau County 1993). In that case, the exclusion specified and significantly understated the face amount of the original note secured by *598 the mortgage. In this case, however, it is not disputed that each exclusion correctly stated the principal amount of the original note secured by the mortgage. The plaintiff also relies on Southwest Title Insurance Co. v. Northland Build. Corp., 552 S.W.2d 25, 429 (Tex. 1977). That court held that where the exception stated that it was limited to prior liens securing a specific amount of indebtedness, there was no exception for operation of a dragnet clause securing additional future indebtedness. The Court reasoned that the exception specified the indebtedness and the policy contained “no statement to the effect that the coverage of the policy is subject to these certain deeds of trust and to whatever indebtedness may therefore be secured.” Id.
The exclusions in this case do not purport to describe the total amount of the encumbrance. They except a mortgage, specify its original amount and identify the holder of the mortgage. The language of the exclusion must be strictly construed against the insurer. This does not mean, however, that because the description is arguably misleading as to the original amount of the indebtedness secured by the mortgage because of the dragnet clause, the exclusion is limited to the amount specified. To the extent that either of the cases relied on by plaintiff would require that result, I decline to follow them. The phrase “in the original amount” cannot fairly be interpreted as limiting the exclusion to $60,000. On the contrary, the import of the word “original” is that no representation is made as to the current indebtedness secured by the mortgage. The senior indebtedness in this case arises out of the provisions of the excluded mortgage which is adequately described in the exclusion, notwithstanding the absence of a book and page number. Accordingly, the defendant is entitled to summary judgment on Count I.
2.Negligent Misrepresentation
In order to recover for negligent misrepresentation, a plaintiff must prove that the defendant (1) in the course of his business, (2) supplies false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information. Nota Construction Corp. v. Keyes Associates, Inc., 45 Mass.App.Ct. 15, 19-20 (1998).
Plaintiff claims that Pace relied upon the title insurance policy in lending funds to the Pereiras and would not have made the loan had the policies accurately described the encumbrances. The record evidence is to the contrary. Pace testified that he relied upon his attorney, Cohen, to determine the amount of the encumbrances, to make sure that he was adequately secured and to advise him of any problems with the security. (Pace Dep. p. 40, 43, 50.) There is no evidence in the record that First American, through Cohen or otherwise, agreed to prepare a preliminary title report or assumed any duty to Pace apart from issuing the policy. It is undisputed that First American did not issue the policy until after the loan closed. As a matter of law plaintiffs claim for negligent misrepresentation fails. See Lawrence v. Chicago Title Ins. Co., 237 Cal.Rptr. 264, 268 (1987) (where insures had not seen or relied upon preliminary title report prior to making loan, reliance required for negligence claim was absent).
3.Negligence
While the parties agree that Cohen was negligent in not reading the senior mortgages before issuing the policies, they dispute (1) whether First American owed Pace a duty to disclose the existence of the dragnet clause, and (2) whether Cohen’s negligence was as an agent of First American or as plaintiffs counsel.[4]
A title insurer’s duty is governed by the terms of the policy. Somerset Savings Bank v. Chicago Title Insurance Company, 420 Mass. at 430. Massachusetts courts have declined to impose a duty upon title insurance companies to search for, and to disclose to the insured, any reasonably discoverable information that would affect the insured’s decision to proceed with the purchase absent evidence that the insurer voluntarily assumed duties, in addition to the issuance of a title insurance policy. Id. Thus, if the title insurance company agrees to conduct a search and to provide the insured with an abstract of title, it may expose itself to liability for negligence as a title searcher, in addition to any liability under the policy. Id., citing Focus Inv. Assocs. v. American Title Insurance Co., 992 F.2d 1231, 1235-36 (1st Cir. 1993). See Focus Inv. Associates, Inc. v. American Title Insurance Co., 992 F.2d at 1235-36.
In the instant case, there is no evidence in the record that First American, through Cohen or otherwise, voluntarily assumed any duty to Pace beyond issuing the policy.
4.Violations of G.L.c. 93A and G.L.c. 176D
Plaintiffs statutory claims for unfair and deceptive business and insurance practices rest entirely upon the contract and negligent misrepresentation claims.[5] As defendant is entitled to summary judgment on Counts I and II, it is also entitled to summary judgment on plaintiffs claims under G.L.c. 93A and G.L.c. 176D.
ORDER
For the foregoing reasons, it is hereby ORDERED that First American Title Insurance Company’s Motion for Summary Judgment be ALLOWED as to all counts of the complaint. It is further ORDERED that Private Lending’s Motion for Summary Judgment on Count I be DENIED.

 Although there are references to a preliminary title report in the memoranda and statements of fact submitted by the parties, there is no evidence in the record that a preliminary *599 title report was prepared.

 As stated above, the dragnet clause in the Luso mortgages eliminates equity which would otherwise have been available to satisfy the Triad and Pace mortgages. For example, on one of the mortgaged properties, 7 Oak Street, the dragnet clause places the Triad mortgage behind $245,000 of senior debt and the Pace mortgage behind $520,000 of senior debt.

 The record does not disclose whether the proceeds of the mortgaged properties (1) through (5) would have been sufficient, if the dragnet clause were ignored, to satisfy the Luso mortgage on the property and the senior Triad mortgage. If, putting aside the dragnet clause, the proceeds were not sufficient to pay off the ‘'original” amount of the Luso mortgage specified in the Exclusion B and other senior indebtedness, including the Triad loans, Pace suffered no loss as a result of the dragnet clause and First American is entitled to summary judgment on that independent ground.

 In contrast to the negligent misrepresentation claim, which is premised solely on Pace’s alleged reliance on the title insurance policy, the negligence claim is not limited to the policy, but appears to be based on Attorney Cohen's conduct prior to issuance of the policies.

 In its Memorandum in Opposition to the Motion for Summary Judgment, plaintiff describes the purportedly unfair conduct as misrepresenting facts or policy provisions relating to coverage and unfair claims settlement practices.