McCann, J.
INTRODUCTION
William and Linda Shoemaker are represented by Gordon E. Feener, Esq.; Liberty Mutual Insurance Company by Elizabeth C. Caiazzi, Esq.; K.R.T. Contracting, Inc. by John D. Boyle, Esq., Brett J. Harpster, Esq. and Anthony M. Campo, Esq,; McKenzie Engineering Company, Inc. and Peter Reynolds by J.S. Gregory, Esq.; Brian Carlson Custom Homes, Inc. by George E. Watts, Esq.
Docket No. 02-708A is a cause of action brought by William Shoemaker against Liberty Mutual and K.R.T. Contracting, Inc. The pertinent Counts are: (I) Breach of Contract against Liberty Mutual; and (II) 93A against Liberty Mutual. There are other counts and a third-party action that are unrelated to the motions before this Court.
Docket No. 02-1319A is a single count for Declaratory Relief by Liberty Mutual Insurance Company brought against William J. Shoemaker and Linda M. Shoemaker, K.R.T. Contracting Co., Inc., McKenzie Engineering Co., Inc. and Brian Carlson Custom Homes, Inc.
In Docket No. 02-708A, William Shoemaker filed a Motion for Summary Judgment against Liberty Mutual. Liberty Mutual filed a Cross Motion for Summary Judgment against William Shoemaker.
In Docket No. 02-1319A, Liberty Mutual brought a Motion for Summary Judgment against William J. Shoemaker and Linda M. Shoemaker and William Shoemaker filed a Motion to Dismiss Liberty’s Complaint.
FACTUAL BACKGROUND
In the latter part of 1999 and early part of 2000, William J. Shoemaker and Linda M. Shoemaker (Shoemakers) contracted for the construction of and purchase of a home which had been designed and constructed by Brian Carlson Custom Homes, Inc. (Carlson). The home itself was purchased in April of 2000. The concrete garage floor was installed in May of 2000. Shoemakers moved into the premises in July of 2000.
Prior to moving into the premises, Shoemakers did not have a home inspection. At the time that the Shoemakers moved in, the dwelling was only partially completed.
Shoemakers first observed a crack in the foundation wall at the right rear underneath the attached garage. In April 2001, when first noticed, the crack was approximately two fingers in width. Shoemakers discussed the crack in the wall with a masonry contractor, Richard Demers. He recommended that McKenzie Engineering Company inspect it. McKenzie did and issued a report and plans for the repair or placement of the wall. The report outlined two options to address the wall. The first option was “pulling in” the existing damaged wall and then reinforcing it with “deadmen” anchors. The second option involved replacement of the cracked wall with an actual retaining wall. The McKenzie Report was completed in May of 2001. Shoemakers opted for the first option involving the installation of “deadmen” as the second option was substantially more in terms of cost. On May 14, 2001 Shoemakers notified Liberty regarding the crack that had been discovered.
On May 22, 2001, K.R.T. Contracting, Inc. (K.R.T.) prepared a work list at the request of Shoemakers in preparation of completing the McKenzie Engineering plans necessary to carry out the work to accomplish the “deadmen” option.
On May 24, 2001, the wall was inspected by Liberty’s adjuster.
A McKenzie Engineering Report, prepared at the request of Shoemakers, dated May 14, 2002, stated “it is my belief this wall was not designed or constructed as a retaining wall as would be necessary to resist the soil forces generated by such a high unbalanced fill condition.” Liberty Mutual Insurance Company insured the Shoemakers under a homeowners policy No. H32-212-126672-0205 insuring the premises in question, 94 Holland Hills Road, Leominster, Massachusetts. In pertinent part the policy provided the following coverages: Coverage A — Dwelling. “We cover (1) a dwelling on the ‘residence, premises’ shown in the Declarations, including structures attached to the dwelling. . .
“Section I — Exclusions in Policy . . .: 2. We do not insure for lost property described in Coverages A and B caused by any of the following. However, any ensuing lost property described in Coverages A and B not excluded or excepted in this policy is covered . . . c. Faulty, inadequate or defective: (1) planning, zoning, development, surveying, siting; . . .”
*74 There was also an Amendatory Endorsement known as FMHO 1089 regarding the “additional coverages” portion of the policy. Under Section 1, property coverages, and under additional coverages in that section, Item 8 “Collapse” is deleted and replaced by the following: “8. Collapse. With respect to this additional coverage: (1) Collapse means an abrupt falling down or abrupt caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose. (2) A building or any part of a building that is in imminent danger of collapse is not considered to be in a state of collapse. (3) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it: (a) has separated from another part of a building; (b) shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion, b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused only by one or more of the following ... (6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.
“Loss to a . . . foundation, retaining wall... is not included under Items (2), (3), (4), (5), (6), unless the loss is a direct result of the collapse of a building.”
In June of 2001, K.R.T. began repairs to the wall in question. During the course of the repairs by K.R.T., the wall fell completely to the ground. It fell within hours of K.R.T. beginning the project.
On June 26, 2001, the Shoemakers submitted a claim for property damage to Liberty describing the claim in the amount of $14,482 for “repair crack in foundation wall garage.” In July, Liberty notified Shoemakers that their claim for property damage was denied because the observations made by Liberty at the time they were made, which was before work had commenced to repair the crack, did not indicate that a true “collapse” had occurred within the policy language.
On August 2, 2001, the Shoemakers submitted a second proof of loss describing the loss as a garage wall that had collapsed during the course of remodeling/renovation. That claim was denied by Liberty on the grounds that the wall failed either due to lack of adequate design or failure to construct as originally planned but not due to any sudden unanticipated stress or stresses.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. See Cassesso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.R 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. See Id. at 17.
A pariy moving for summary judgment who does not bear the burden at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Interpretation of an insurance policy is a “question of law for the trial judge ...” Nelson v. Cambridge Mutual Fire Insurance Co., 30 Mass.App.Ct. 671, 673, rev. denied, 410 Mass. 1104 (1991), quoting Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). “When the provisions of a policy are plainly and definitely expressed, the policy must be enforced in accordance with the terms.” Somerset Savings Bank v. Chicago Title Ins. Co., 420 Mass. 422, 427 (1995) (citations omitted). The Court finds that the provision at issue is definitely expressed so as to permit only one interpretation. This is so because “(l]oss to a [] . . . foundation” is within a list of ancillary items to a home under the plain terms of the provision. The ancillary items are not considered part of a building. As such, reading the provision to allow for insurance coverage when the collapse of Shoemakers’ “foundation” was not caused by the collapse of the garage itself, would render the exclusionary phrase, “. . . unless the loss is a direct result of the collapse of a building,” meaningless. Such a reading would allow for insurance coverage anytime a swimming pool, flue, drain or other ancillary item to a home collapses merely from defective material or methods during construction, remodeling or renovation, and not by the collapse of part or all of the home’s physical structure.
Even though the foundation wall of Shoemakers’ home’s attached garage collapsed during the “remodeling or renovation” provided by K.R.T. on June 9, 2001, such a collapse is not covered under Shoemakers’ homeowner’s policy. In short, Shoemakers’ loss is precluded from coverage by Section (6) specifically, “(l]oss to a [] . . . foundation” is only covered if the foundation collapsed as a “direct result of the collapse of a building.” In this case, the foundation wall of the garage was the only part of the garage to collapse.
Accordingly, this Court rules that Shoemakers’ loss is not covered by his homeowner’s policy.
*75 In Docket No. 2002-1319 service was originally made on Shoemakers through their counsel. A Motion to Dismiss was Filed and since that time personal service was made on William J. Shoemaker and Linda M. Shoemaker (see papers 8 and 9).
Shoemakers’ Motion to Dismiss in Docket No. 2002-1319 is DENIED. The Motion for Summary Judgment by Liberty Mutual Insurance Company in 02-1319 and the cross motion of Liberty Mutual Insurance Company in Docket No. 02-708 are both ALLOWED. The Motion for Summary Judgment by William Shoemaker in Docket No. 2002-708 is DENIED.
ORDER
In regard to Docket No. 2002-708:
The Motion for Summary Judgment by William Shoemaker is DENIED.
The Cross Motion for Summary Judgment by Liberty Mutual Insurance Company is ALLOWED.
In regard to Docket No. 02-1319:
The Motion for Summary Judgment by Liberty Mutual Insurance Company is ALLOWED. The Motion to Dismiss by William J. Shoemaker and Linda M. Shoemaker is DENIED.